UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| **Benjamin Goff,** | ) | **CASE NO. 1:14 CV 880** |
| | ) | |
| **Plaintiff,** | ) | **JUDGE PATRICIA A. GAUGHAN** |
| | ) | |
| vs. | ) | |
| | ) | |
| **Scott Robertson, et al.,** | ) | **Memorandum of Opinion and Order** |
| | ) | |
| **Defendants.** | ) | |

### Introduction

This matter is before the Court upon Defendants' Motion for Judgment on the Pleadings (Doc. 13).  This case arises out of plaintiff's termination of employment as a part-time police officer with the Village of New Washington, Ohio. For the following reasons, the motion is GRANTED.

### Facts

Plaintiff Benjamin Goff filed his Complaint against defendants Scott Robertson (Village

1

of New Washington Chief of Police)[1], Benjamin Lash (Village of New Washington Mayor), New Washington Township (Village), Former Crawford County Sheriff Ronnie Shawber[2], the Village of New Washington Village Council, Carolina Kapple (New Washington Village Council Member), Gertrude Dunwald (New Washington Village Council Member), Paul Forster (New Washington Village Council Member), Geraldine Lucius (New Washington Village Council Member), Joseph Blum (New Washington Village Council Member), Scott Karl Hiler (New Washington Village Council Member), and Brain Agin (New Washington Village Council Member).

The Complaint alleges that Robertson retaliated against plaintiff and defamed him because plaintiff had uncovered corrupt activity committed by Robertson. The remaining defendants assisted in covering up or facilitating Robertson's actions. The Complaint generally alleges the following[3]. During the years 2009-2010, a police investigation was conducted of Robertson "involv[ing] state felony charges relating to numerous theft in office claims." The investigation was "launched" by a former mayor of New Washington Village (hereafter, the Village). Plaintiff, a Village police officer since 2007, was authorized to assist in the investigation. The mayor submitted a list of the formal charges against Robertson to the Village Council and sought Robertson's removal. At a Village Council meeting on August 30, 2010, the Council illegally, and contrary to Ohio Revised Code provisions, voted to have Sheriff Shawber,

---

[1]  Defendants have notified this Court that defendant Robertson has died during the pendency of this action.

[2]  Defendant Shawber has not been served.

[3]  The background facts constitute 13 pages of this 38 page Complaint and have been summarized.

2

a friend of Robertson's, investigate the matter. In doing so, the Council intentionally failed to act so as to ensure that Robertson would remain Chief of Police. In February 2013, Mayor Lash acknowledged at a Village Council meeting the "continuous and/or felonious problems" with Robertson. The defendants never sanctioned Robertson for his wrongdoing.

From March to July 2013, Robertson engaged in a campaign to impugn plaintiff's integrity. Robertson gave false information to the Crawford County sheriff that plaintiff was not assigned to investigate a certain case. As a result, plaintiff's ability to conduct investigations was severely restricted and his credibility was diminished to the point that he was considered a detriment in any criminal case that he was involved in.

Plaintiff made two public records requests on June 14, 2013. One request was made to the Village police department and Crawford County sheriff, and one request was made to Chief Robertson. The requests sought records related to the investigation of Robertson. On August 2, 2013, the attorneys for the Village responded to plaintiff's records request, but his request to the police department went unanswered. Immediately after making the requests, plaintiff's police hours were reduced from June through September 2013. In August 2013, plaintiff was made to submit to a psychological examination by Robertson. On August 25, 2013, Robertson placed plaintiff on an indefinite administrative suspension. No reasons were given for the reduction of hours or the suspension although requested by plaintiff. Further public records requests were made by plaintiff and not responded to. On October 31, 2013, plaintiff was "*de facto* terminated" from his position as Village police officer upon Robertson's recommendation and no valid reason was given. By correspondence of November 27, 3013, Mayor Lash "suggested" plaintiff's termination and the Village Council never considered plaintiff's request for an appeal.

3

In its motion, defendants appended the following documents which are properly before the Court given that plaintiff has referred to them in his Complaint:[4] an August 2, 2013 letter from an attorney responding to plaintiff's public records request on the Village (Ex. A); a letter, including a *Brady Notice,* addressed to Mayor Lash from the Crawford County Prosecuting Attorney, dated April 22, 2013, wherein various instances of alleged wrongdoing (from 1990 to 2013) on plaintiff's part are identified and the prosecuting attorney states that plaintiff's actions may call into question his credibility in testifying in a trial or hearing (Ex. B); Chief Robertson's written Decision and Report on plaintiff's Pre-Disciplinary Hearing which terminated plaintiff's employment as a police officer (Ex. C); Mayor Lash's October 31, 2013 Decision upholding the Chief's Report and Recommendation terminating plaintiff's part-time employment as a police officer, and portions of  the Personnel Policy and Procedure Manual of the Village of New Washington regarding disciplinary principles and progressive discipline (Ex. D); and the October 7, 2013 Pre-Disciplinary Conference Notice to plaintiff (Ex. E).

The Complaint sets forth eight claims, but contains two which are labeled "Count VI." Count One alleges "Conspiracy" under § 1983. Count Two alleges a "Fourteenth Amendment Due Process Claim." Count Three alleges "Fourteenth Amendment Due Process Claim:  Denied Right to Appeal." Count Four alleges "Municipal Liability."  Count Five alleges "Failure to Respond to Public Records Requests." Count Six alleges "Slander."  The second Count Six alleges "Failure to Properly Train."  Count Seven alleges "Retaliation."

---

[4] *See Gardner v. Quicken Loans, Inc*., 567 Fed.Appx. 362 (6th Cir. 2014) (internal quotations and citations omitted) ("In reviewing this motion to dismiss, the panel may consider the complaint along with any document not formally incorporated by reference or attached to the complaint as part of the pleadings if the document is referred to in the complaint and is central to the plaintiff's claim.")

This matter is before the Court upon defendants' Motion for Judgment on the Pleadings.

**Standard of Review**

A "motion for judgment on the pleadings under Rule 12(c) is generally reviewed under the same standard as a Rule 12(b)(6) motion."*Mellentine v. Ameriquest Mortg. Co.,* 2013 WL 560515 (6th Cir. February 14, 2013) (citing *EEOC v. J.H. Routh Packing Co.*, 246 F.3d 850, 851 (6th Cir.2001)):

> The court must construe the complaint in a light most favorable to the plaintiff and accept all factual allegations as true. The factual allegations must raise a right to relief above the speculative level. In other words, the Rule 12(b)(6) standard requires that a plaintiff provide enough facts to state a claim to relief that is plausible on its face.
>
> While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. Bare allegations without a factual context do not create a plausible claim. A complaint must contain direct or inferential allegations respecting all the material elements under some viable legal theory. The bare assertion of legal conclusions is not enough to constitute a claim for relief.

(*Id.*) (internal citations and quotations omitted).

**Discussion**

Defendants move to dismiss the Complaint based on various arguments.  For the following reasons, the Court agrees that dismissal is warranted.

All claims against the New Washington Village Council are dismissed as that entity is not *sui juris.  See Humphries v. Chicarelli*,  2012 WL 5930437 (S.D.Ohio 2012) (The city council is not a separate legal entity from the municipality itself) (citing *Mollette v. Portsmouth City Council*, 169 Ohio App.3d 557 (2006)) (stating that a city council is not *sui juris* ). Plaintiff's argument to the contrary confuses the Village itself with the Village Council.  Plaintiff has named the Village Council and the Village as separate defendants.

Count One alleges conspiracy under § 1983.  The Complaint alleges that all defendants

5

knowingly agreed and participated in a scheme to deprive plaintiff of his constitutional rights under the First, Fourth, Fifth, Sixth, and Fourteenth Amendments by maligning plaintiff as a police officer and destroying his credibility so that he could no longer serve in that capacity and was terminated.

"A civil conspiracy under § 1983 is an agreement between two or more persons to injure another by unlawful action. To prevail on a civil conspiracy claim, a plaintiff must prove the following elements: (1) a single plan existed, (2) [the defendant] shared in the general conspiratorial objective to deprive [the plaintiff] of his constitutional (or federal statutory) rights, and (3) an overt act was committed in furtherance of the conspiracy that caused injury to [the plaintiff]." *Regets v. City of Plymouth,* 568 Fed.Appx. 380 (6th Cir. 2014).

Initially, defendants point out that no constitutional violations are alleged under the Fourth, Sixth, or Eighth Amendments.  Plaintiff alleges that defendants retaliated against him in violation of the First Amendment for speaking out about Robertson's corruption, and denied him due process in violation of the Fourteenth Amendment.  Both allegations arise out of the termination of plaintiff's employment.  Regardless, this claim is barred by the intra-corporate conspiracy doctrine which holds that an entity cannot conspire with its own agents or employees. *Hull v. Cuyahoga Valley Joint Vocational School District Board of Education*, 926 F.2d 505, 510 (6th Cir.1991).  The doctrine has been applied where, as here, the plaintiff alleges that a number of defendants who worked for the same governmental entity violated § 1983 by conspiring among themselves to abridge the plaintiff's federal constitutional rights. *See Wright v. Bloomfield Tp.,* 2014 WL 5499278 (E.D.Mich. October 30, 2014) (citations omitted).   As all alleged conspirators are employees or agents of the Village, Count One fails.

6

Count Two alleges a Fourteenth Amendment Due Process claim. Plaintiff alleges that his equal protection rights were violated because he is under the age of 40 and Chief Robertson is over the age of 40. This claim fails as plaintiff cannot allege that being under the age of 40 is a suspect class entitled to Fourteenth Amendment protection.

Count Three alleges a Fourteenth Amendment Due Process claim. Plaintiff alleges that the Village denied plaintiff a right to appeal his termination to the Common Pleas Court because he was never given a factual basis for his termination. Judgment on the pleadings is warranted on this claim. The Village Personnel Policy provides that, in the case of removal, the employee may appeal to the Court of Common Pleas of Crawford County within 10 days of the finding. (Doc. 13 Ex. D) Ohio Revised Code § 2505.03 also provides for an appeal to the common pleas court from an adverse administrative decision within 30 days. Chief Robertson issued his decision and recommendation, supported by facts, to terminate plaintiff. Mayor Lash issued his Decision based on that recommendation. Plaintiff's Complaint shows that he chose not to appeal. Where a plaintiff fails to take advantage of the post-deprivation proceedings, he waives his procedural due process claim. *Farhat v. Jopke*, 370 F.3d 580 (6th Cir. 2004) (citations omitted).

Count Four alleges municipal liability. It is well-established that a municipality may only be held liable under § 1983 when an official policy or custom causes an employee to violate another's constitutional rights. *See Smith v. Patterson*, 430 Fed.Appx. 438 (6th Cir. 2011) (citing *Monell v. Dept. of Soc. Servs.,* 436 U.S. 658 (1978)). There is no respondeat superior liability under § 1983. *Id.* There is no specific allegation of an unconstitutional Village policy or custom. In particular, Count Four only alleges:

7

> The violations of plaintiff's constitutional and/or state rights... were the direct result of the [Village's] customs, practices, procedures, and/or policies, in that the [Council] and its members and/or the Mayor, do not know, nor do they understand, that the Ohio Revised Code, the local laws and/or the Federal laws bestow upon an individual hired as a police officer for their department a gauge of substantive rights that may not be denied to that person, nor may such rights be afridged [sic].

(Compl. ¶ 29) This allegation does not amount to an identification of any specific policy or custom.

Count Five alleges a failure to respond to plaintiff's "numerous" public records requests he made in 2013.  The Complaint specifically refers to two requests he made on June 14, 2013. Defendants submit a copy of the Village's August 2, 2013 response to plaintiff's public records request.  (Doc. 13 Ex. A) Defendants assert that the response encompassed both requests made. Plaintiff does not contest this assertion.  This claim fails.

The first Count Six is a state law claim for slander against all defendants. Defendants argue that the Complaint fails to plead the elements of this claim. The Court agrees.  A claim for slander requires the following elements: (1) the defendant made a false and defamatory statement concerning another; (2) there was an unprivileged publication to a third party; (3) there exists fault amounting at least to negligence on the part of publisher; and (4) there is either accountability of the statement irrespective of special harm or the existence of special harm caused by the publication. *Watson v. Highland Ridge Water & Sewer Assn., Inc.*, 2013 WL 1749729 (Ohio App. 4th Dist. April 10, 2013) (citations omitted).  Defendant points out that plaintiff did not allege, at a minimum, that the allegedly slanderous statements were not a privileged publication made to a third party.  Plaintiff did not oppose this assertion.

The second Count Six is entitled failure to train.  This claim alleges that defendants hired, retained, and continued Chief Robertson's employment although they knew he was unable to

8

perform his duties and lacked the proper training for his position.  A municipality can be liable under § 1983 on a failure-to-train theory when the "failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." *City of Canton v. Harris*, 489 U.S. 378, 388 (1989).  "To succeed on a failure to train or supervise claim, the plaintiff must prove the following: (1) the training or supervision was inadequate for the tasks performed; (2) the inadequacy was the result of the municipality's deliberate indifference; and (3) the inadequacy was closely related to or actually caused the injury." *Ellis ex rel. Pendergrass v. Cleveland Mun. Sch. Dist.*, 455 F.3d 690, 700 (6th Cir.2006). A municipality can be liable under § 1983 only if the plaintiff can demonstrate that his civil rights have been violated as a direct result of that municipality's policy or custom or if a failure to train amounts to deliberate indifference to such rights. *Burley v. Gagacki*, 729 F.3d 610 (6th Cir. 2013).  As discussed herein, plaintiff has failed to plead a particularized constitutional injury that survives review of the Complaint.  This warrants dismissal. *Gumble v. Waterford Township*, 171 Fed.Appx. 502 (6th Cir. 2006) (Plaintiff's failure to train claims against the police chief and the township failed in the absence of a showing that his constitutional rights were violated.); *May v. Franklin County Comm'rs*, 437 F.3d 579, 586 (6th Cir.2006) (The court held that there can be no § 1983 liability for failure to train where the individual defendants did not violate plaintiff's constitutional rights.)

Count Seven alleges that all defendants retaliated against plaintiff for exercising his First Amendment right to free speech in a series of acts including reducing his work hours, making him submit to a psychological examination, causing his name to be "severely diminished" in the area, and, ultimately, terminating plaintiff.  These unconstitutional acts were undertaken by

9

defendants in order to intimidate plaintiff into no longer pursuing the theft in office charges against Robertson.

"For a public employee to establish a claim of First Amendment retaliation, he must show that (1) he engaged in constitutionally protected speech or conduct; (2) the employer took an adverse action against him that would deter an ordinary person from engaging in that conduct; and (3) there is a causal connection between elements one and two." *Rorrer v. City of Stow,* 743 F.3d 1025 (6th Cir. 2014) (citing *Scarbrough v. Morgan Cnty. Bd. of Educ.*, 470 F.3d 250, 255 (6th Cir.2006) and *Farhat v. Jopke*, 370 F.3d 580, 588 (6th Cir.2004) (holding that causation is present when "the protected speech was a 'substantial' or 'motivating factor' in the adverse action").

Defendants argue that Chief Robertson's written Decision, Mayor Lash's Decision, and the Notice of Pre-Disciplinary Conference which all set forth enumerated charges and reasons for plaintiff's termination which have nothing to do with his criticism of the Chief show that plaintiff's speech regarding the 2010 investigation was not the cause of his termination. Plaintiff provides no substantive response to this argument.

Plaintiff's Complaint shows that there was no causal connection between his earlier speech and his termination. According to plaintiff's allegations, the investigation of the Chief, of which plaintiff was authorized to assist, occurred "during the years" 2009 and 2010. Plaintiff was terminated in October 2013. Additionally, in his Complaint, plaintiff refers to his termination by the Chief and the upholding of that termination by the Mayor. Defendants submit the documents to which plaintiff refers. These documents enumerate various reasons for plaintiff's termination. Plaintiff did not challenge the termination by appealing the decision to

the Common Pleas Court. In his brief, plaintiff does not address these documents or the reasons stated for his termination. Accordingly, the Court agrees with defendants that the pleadings establish that there is no causal connection between plaintiff's participation in the 2009-2010 investigation and his termination in 2013.

### **Conclusion**

For the foregoing reasons, Defendants' Motion for Judgment on the Pleadings is granted.

IT IS SO ORDERED.

                         /s/ Patricia A. Gaughan
                         PATRICIA A. GAUGHAN
                         United States District Judge

Dated: 11/17/14